Good morning. I'm Joan Oppenheimer, Counsel for the Commissioner, and I'd like to reserve five minutes for rebuttal. This case, the procedural question in this case, occurs in the context of an abusive shelter, and it's likely that the procedural question at issue here will be outcome determinative no matter what side this court rules on. If government loses, as it did below, we cannot collect the tax. If the government wins, the consequence would be that this court would determine that the bifurcated election is invalid, and the case would have to be remanded to determine whether the adjustments to the FPA were invalid. The adjustments to the partnership return in the final partnership administrative in the FPA. But this particular tax shelter... Do me a favor, don't use code words that you're familiar with and I'm not. Okay. Because then I have to go and think, and I have trouble thinking. Okay. The final partnership administrative adjustment determined adjustments to the partnership return. If this case is reversed, the case would be remanded to the tax court to determine the validity of the adjustments. But the particular... You know, I kind of like to figure out what's going on on cases a lot of times. And what it seems to me that a little bit, the taxpayer lost first and then you lost at the tax court, right? We lost in the tax court. You lost in the tax court. Correct. And I'm wondering why did it take the government, we're talking about $32 million, right? That's the disallowed loss. Right. Why did it take the government two years? You know, I'm just trying to figure. It seems that... And it just sort of seems that perhaps the tax court was a bit irritated with the government. Did the government take a different position on other cases previously and then suddenly someone else looked at it? Or did the government just let this sit around for two years and then suddenly they go, aha, you know, we shouldn't have been sitting on our hands for two years. What happened in those two years? Well, I don't know the answer to the question. I'm not aware of any other cases involving bifurcated election. And there seems to be no legitimate reason for one. They made a bifurcated election attempting to treat the partnership items differently, depending on whether they were direct partner or indirect partner. But now the opt-out comes in when the government does something wrong, right? Correct. And in this case, it's undisputed essentially that there were problems with the government's letter, right? Well, what happened was the government was supposed to send out a notice of the beginning of administrative proceedings 120 days before it sent out the final partnership administrative adjustment, and it didn't. It sent both notices out at the same time. So the consequence of its failure to send out the first notice 120 days ahead of time was that under 6223E3B, any partner was treated as a party to a partnership proceeding, but he had the right to opt out if he chose to do so. Now, my understanding is after all this happened, then the taxpayer at some point in these proceedings asked, well, then we just want to, we don't want to bifurcate, we just want to completely opt out. But then the government said, no, you can't do that. If they were allowed to opt out completely and be treated as indirect for the full period as opposed to bifurcated, they would win here, wouldn't they? Because the tax courts already determined that the direct partners, that there was no liability for the indirect partners, right? Well, their elections were inconsistent for the two different, for two different interests. They elected out with respect to their interest of indirect partners. They elected in with respect to their interest as direct partners. So they had a bifurcated interest. But didn't at some point, didn't they say they wanted, they tried to change that, but they weren't allowed to do that? Well, they filed a written statement to ratify the election out, saying if the elections are not given effect for the interest of taxpayers of indirect partners, then they should be determined to apply to both. But wasn't that beyond the notice time? It was, yes. It was two years beyond the notice time. So they couldn't do it. Basically, they're trying to win a case that they can't win by this procedural strategy that the case doesn't allow. On the merits of the tax shelter, the two appellate courts that have considered the short sale variant of the son of boss tax shelter, which the taxpayer utilized, both cases of the tax shelter. Well, that's not before us. No. So why are you mentioning that? Well, it's in my reply brief. But I will stick to the procedural issue. Well, let me ask you about that. Your argument is that the express language of 6223E2B, which says the partnership interest of the parties, your argument is in your brief, and you were real clear about it, you actually argue that means all. Well, let me ask you this. If it means all, why didn't Congress say all partnership interests? Well... It's page 37 of your brief, and I think it's footnote 9 in their brief where they raise the argument that the does not mean all. I guess my answer to the question is if they meant designated partnership items or some partnership items, why didn't they say designated partnership items or some partnership items? Well, how about answering my question? Pardon? Does that make it ambiguous, then? Well, in our view, it's not ambiguous. You make it ambiguous by saying the word the means all. The word the does not mean all. The word the does also not mean some. It also does not mean designated. If the statutory language is not crystal clear, then we go to the legislative history. And the legislative history, as the Supreme Court tells us in Woods, supports the commissioner's interpretation. The purpose of TAFRA enacted in 1982 was to avoid duplicative proceedings and have the results be consistent on a partner among the different partners. And the task court's decision, and the court in Woods found that the statutory language in which the government was supposed to interpret the document relied in that case to be essentially indeterminate. Does the legislative history help us on the opt out part of it, which we move into here? Well, I think the legislative history to the most, you know, we believe it supports us, but essentially it just repeats the statutory language. So I would say what helps us the most is the context. First of all, the policy behind TAFRA, which is to avoid duplicative proceedings and all the inconsistent results. But if partnerships are defined elsewhere as direct and indirect, how can we say when we look at that word that it's crystal clear from it what it means? Well, Congress did not use the word direct or indirect in this statute, and they did in a number of other statutes. As Your Honor pointed out, they carefully define the words direct and indirect in tax matters, partners, pass-through partners, notice partners, and they use them in various statutes. For example, in Section 6226, they have different rules for filing of the tax of the time to file a tax court petition. So I guess what you're saying, though, if this has never come up before, this is the first time Congress has used the word direct and indirect? Yes. IRS has had this come up? Yes, that's correct. We're not aware of any other cases on this issue, nobody. So what does Woods tell us about this issue, then? Well, Woods tells us we should look at the underlying purpose of TEFRA, which is the avoidance of duplicative proceedings and the inconsistent treatment among the partners, which is likely to result by taxpayers' attempt to create two proceedings. They attempt to opt in with respect to the direct partner interest, which means that we have to have a TEFRA partnership proceeding. They attempt to opt out with respect to the interest as a TEFRA partnership proceeding, which means if the IRS had acted timely, it would have had to issue a notice of deficiency, and then the taxpayer could have challenged the deficiency. So exactly what are you asking us to hold here, then? Well, I'm asking you to hold that the bifurcated election was invalid. Why? That it was invalid because it's inconsistent with the statutory language and the purpose behind TEFRA. The taxpayers could not make a bifurcated election. So period, under these circumstances you just can't do it. That's correct. And I'm asking this Court to reverse the decision of the tax court and to send this case back so that the tax court can make a partnership administrative adjustment, in which case the indirect, the taxpayer's interest as an indirect partner would be considered because the election out was invalid. So how long has this been in effect? And you're saying this is the only case that you know of where someone's tried to do this? That is correct. So wouldn't that have been a flag to someone when they did it, and then two years later, that's the first thing they did? I mean, people get audited for, you know, I got audited at random one time. They sent me a letter saying congratulations, you didn't do anything wrong, but we're going to audit you anyway. So you're picked at random. So what are your flags? What flags someone? Wouldn't $32 million and doing something under the statute that never had been done before? I can't answer the question. Obviously the IRS made a mistake in not issuing a notice of deficiency. They blew the time period to do it. On the other hand, I would say that the taxpayers were less than candid in failing to call to anyone's attention in this proceeding. Well, but there's no cases out there that say they can or they can't do it. I guess it's all left to interpretation at this point. Because we have no cases out there that, you know, you're asking us to do it for the first time. What do you mean that the taxpayers attempted to be sneaky, my word, by not telling you that we're doing something a little unusual here? Well, they waited and they commenced this partnership proceeding. They carefully waited until after the expiration of the period for issuing a notice of deficiency to assert the taxpayers had elected to have indirect partnership. But you just admitted you blew that. Well, we blew the statute. That is correct. And then they told you this is what we're going to do. I'm sorry, I'm not. Well, why is that sneaky? Well, they commenced this proceeding, but I think... Well, they had a right to commence it. Yes, there was a final partnership administrative adjustment proceeding that had been commenced. But I don't think they informed the court of these elections and the fact that they had... Until after the IRS had blown the statute on issuing a notice of deficiency as to the... Well, how does that make that tricky on their part? I don't get that. Well, it's certainly less than candid, Your Honor. So they have a duty of candor to tell you what, when? That you might want to interpret the statute differently and you might want to issue a deficiency? Well, putting aside what they did or didn't do, it's our position that they couldn't bifurcate an election because the statutory language doesn't support it. Back to where we were earlier. And it's inconsistent with the underlying purpose of TEFRA. When Congress wanted to use terms like indirect partner, pass-through partners, notice partners, it knew how to do so. It didn't do it in this statute. And the whole gist of 6223E3B is to talk about, you know, when they say the partner shall be a party to the proceeding unless he elects to have the partnership item. And when they say it's a partnership item, it's a nonpartnership item. The whole gist of it, or the common sense reading it, is that, you know, it's referring to the taxpayer or partner. I'd like to call the Court's attention to something the Supreme Court said in Lynch-Outworthy v. Stevens, which says that plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case in ingenuity and study would suffice. And I would submit that this is what we have here. We submit that the government's reading of the statute is the common sense, natural reading of the statute, and that the taxpayer's position is sort of the harder interpretation that results from the exigency of a hard case in ingenuity and study. Well, what they would say is your reading is one that came out of blowing the statute. Well, that is what they said. But, you know, maybe it's a little hard. Maybe the statute's a little less clear than both of you say. Maybe it's a little bit harder. Again, if the statute is ambiguous, then we go to the underlying purpose of TEFRA, which is to prevent duplicative proceedings. Here they filed inconsistent elections, even though they had only one interest, that of an indirect partner, and they forced the tax court to spend its time determining the fact that they, in fact, had no interest as a direct partner. This is directly contrary to the purpose of TEFRA. All right. Thank you for your argument. We've taken you into overtime. Do I have any time for rebuttal? Not unless any of the panel members have additional questions. I'll ask if they do. Thank you. Richard Firmason, Your Honor. I'm almost tempted to say I'll rest on our pleadings, but that was a very fortuitous question, and I think very insightful. I'll give you my two-minute version of what happened in this case. October 15th is the statute the IRS had to issue the notice by. Notice of deficiency. Notice of deficiency. In this case, it's what they call an FPOM, which is Final Partnership Administrative Adjustment. That comes out on that date because there had been no prior notice of that proceeding. The IRS was compelled to issue this letter that basically would say you have the right to elect out. They actually sent the wrong form letter, and everyone acknowledges that. So there was a lot of confusion on the taxpayer side of it. Do I respond to the letter they sent me, or do I respond in accordance to what the code provides? And that's why there's dual, if you will, elections. Is there a bifurcation? Ultimately, we've never lost this case, Your Honor. We won at tax court. The original appeal in this matter was denied. It was the government's appeal, and the issue there was whether or not this case was ready for appeal. And we were kind of somewhat backed into the corner arguing practical finality. Candidly, the practical finality was when we met with the IRS, presented them these elections, and they adjourned from the meeting to call the national office. We knew, the IRS attorneys knew, they'd blown the statute. The remedy the government has, and what they never really want to talk about, they want to talk about the bad nature or characteristics of the transaction, this son-of-boss arrangement. We don't like to talk about that. What we like to talk about is we did what the code allows. We did an election out. We sent it to the state. Well, you say the code allows it, but there's not a reported decision anywhere from any court saying that you can do what you did, is there? There's no case saying you can't do it, but is there a case, did I miss something? In your briefing, there's a case that says you can do what you did? No, and I think the obvious answer is the remedy the government has when you elect out is they can immediately issue a stat notice. In fact, they have a year to do so. Those elections were provided to the same office that issued the original partnership notice that issued the erroneous advice letter saying you could elect in when in reality you could elect out. Why they didn't issue that notice timely, that's where they blew the statute mistakes. This came up in a meeting with the IRS attorneys the first time we had a conference with them, which was over a year after the original notices and the election out, and at a point where, in fact, the government had blown the statute. Well, what's your position on since if we go back and since, as Judge Bennett has said, there really isn't, there isn't a case interpreting the statute. So if, you know, I always like to look at the plain language of the statute first before I look, before I peek under the covers and look at the legislative history. What's your position about whether it's ambiguous, whether it's clear? We don't think there's ambiguity. We think certainly you can elect out in different capacities as to what those capacities may be. Why do you think that? Does the statute talk about that? Well, I think in other instances in the code you can certainly elect out. But that's other instances in the code, not this statute. What about this statute though? What about the plain language of this statute allows it, the election? Well, I think what the election really allows is to elect out. And that's clearly what they did in that capacity is indirect partners. Can you make two elections for different purposes? If they were different taxpayers, there would be no problem with that. They are, in fact, different taxpayers. The tax court eventually found that there was no liability for is it direct or indirect or what was the, you wanted to change your election not to have it indirect and direct. You wanted to go with one at some point, right? Not exactly, Your Honor. Tell me that. The original case there was some ambiguity of how much was what partnership interest by which party. And I believe in the court's opinion in one of the footnotes they said it appears there's 118% here. So clearly there's an issue of who had what percentage. When we went back and why we feel even stronger in our position today than we did back in 2009 when this case was before appeal is that we were able to pin down those issues of when the transfers occurred and that at the time of this transaction that gave rise to the partnership notice, the FBOP, they only had indirect interest. What's at play if you lose? Then what happens? The IRS told us here's what happens. It goes back and you get into the adjustment game. Well, that probably is what would happen, Your Honor, is that as a practical matter when we talked with Judge Holmes originally in this case, there was somewhat of a debate amongst the parties as to which item should go first, this sort of procedural issue or the procedural substance issues at the same time. And we always felt that, well, if we prevail on this procedural issue, the case is over. The government's always, I think, strongly felt that if they proceeded on the substantive issues and taxpayers, if you will, lose on this procedural issue, they're going to prevail ultimately on the substantive issue. Getting back to your plain language argument that the the really means if Congress wanted to say all, they would have said all rather than the. So why isn't it ambiguous? And if it is ambiguous, let's assume it's ambiguous. I don't understand that you've ever addressed the legislative history argument with regard to the conference report. I think that's because we didn't think it was ambiguous, Your Honor. Okay, but let's assume that somebody might disagree with you. Right. And it is ambiguous. Wouldn't you have responded at least in the alternative to their legislative history argument? Or didn't you have a response? And if you have a response, let's hear it. Well, I don't think we really had a response because we felt it was so clear on its face. Well, I understand that the first time. But now, do you have a response to the legislative history argument? Not at this time, Your Honor. I mean, I think what we feel is most strongly that what this purpose of this provision is, is that when the government doesn't do something like give the original notice, it gives you greater rights. It gives you the ability to elect out. But it doesn't change the meaning of the statute. It doesn't change the meaning of the statute. It gives the government then a right to issue a notice to you directly as an individual. Is there any significance to the plural interest in this statute? You know, elections made as the partnership interests, plural? Nobody's focused on that in the briefing. But does that support your argument? Because your clients had both indirect and direct interests, plural? Or does that have any impact on the construction? I don't know that it has impact on the construction. There was ambiguity at the time the notice was issued as to what their partnership interests would be on the date of the transactions. And that was part of the problem with the cases. There hadn't been any audit or administrative proceedings going into that. So when you get that notice, that gives you a relatively short time frame. Or if you go in and you figure out within 45 days I either need to elect in or elect out, that's what the statute really says, E3. So Congress expressly allows the taxpayer to opt out of a partnership proceedings if there's improper notice. So it's undisputed here that that happened. Correct. But doesn't this suggest that it would have expressly allowed split elections in the statute if it had intended these type of elections to be permissible? I don't know if that's the case, Your Honor. I think the reason there's no cases on point is the government would routinely issue the notice to the individuals upon receiving the election out. I mean, I'm not aware of any. I have a certain amount of pride in this case, but I'll candidly tell you it's never been cited even in tax court. So the JTUSA issue is a very, very backwater of a backwater of an issue as to where this goes. And I think that's why there's no greater case development on it, is because the remedy is so clear under the statute. If you elect out, you've given the government a year or two, in a sense, to tag you with a personal stat notice. And I imagine that would be what would happen in every other instance. If the dollars weren't so big, I'm pretty sure we wouldn't be here today either. But the dollars are what they are. So what's your view of why this didn't come up for two years? I mean, is there, you know, I mean, obviously you have some expertise in the area of tax. What would be the type of things that would flag this type of return? I don't know what flagged it at their level, but I know they issued the notice on the last day of the statute. There were a lot of these type of transactions out there that the government was aware of. You know, I'm given to understand I wasn't involved in the, if you will, the planning of any of those transactions. So I'm kind of late to the party in that sense. I'm given to understand that in some cases people received notices, in other cases the statute ran. Here there is this odd situation on the final day they get this notice. And then what to do? And so while making up their mind what to do, they elect out. They candidly expected they would be getting a notice sometime in the future, and then they would have to decide how they wanted to deal with it at that point. But it seemed the better course to elect out in that capacity. Because ultimately that's the person who would be liable for the tax liability. It didn't come up for two years, really, because by the time the election out was ignored by the government, a proceeding was filed in the Tefra proceeding that did not get calendared for trial. And the way things really work on tax court calendaring is it's probably about a year from the time you file until you'll have a trial date. And the circuit court, which is the tax court that's out of D.C., will schedule that hearing for the next time they're in San Diego, typically, if that's the designated place of trial. And so before that we have what we call a Brannerton meeting. We engage in informal discovery. We actually got a Brannerton request on December 24th. It's about 110 pages. And it basically recited all the things normally you would see going into the substance of these transactions and requested a meeting in February. It was that February meeting that we brought up these elections. That was apparently the first time those had made it to the file in the eyes of the IRS attorneys handling the case. And you think the Woods case doesn't tell us anything at all about this case? No. I'm pretty familiar with Woods and what it's really about. If you'll allow me to digress for a minute, I think I can tell you. Go ahead. I'm familiar because it's a painful subject, not because of this case but because of others. And there was a split in the circuit on this penalty issue. And the real split was in the Ninth Circuit. If you engaged in a transaction that you could get the government to agree was a sham, you're only on the hook for a 20% penalty. If it was this gross valuation penalty, it was 40%. Now, you would think the sham might be a worse thing to be involved with than the gross valuation penalty, but the penalty amount itself was less. So when that went up to the Supreme Court on a split in the circuits, they kind of said, you know, I think what really happened is that's too good to be true. You know, if it's a sham, you should be on that same penalty level as if it's a gross valuation mistake. It's almost that question of, well, you can say in the numerator, here's the valuation overstatement of basis or whatever it may be, understatement of tax. So that's what was driving it then, you think? Oh, absolutely. There's a great case in tax court that explains the split in the circuits. It's called Black Investments. I was the attorney for the taxpayers. We won, in a sense, pending appeal of Woods. And then I think on Wednesday we have a mediation that's probably not going to go as well. So that's what really drove that case. It had to do with penalties. It really had nothing to do with this election. How does this bifurcated, I know you don't like that word, but let's just use it for shorthand, bifurcated notice, how does that further the intent of TEFRA? Well, I think, you know, you could have multiple partners in a situation, too, and they could elect different things. What creates the rise or gives rise to the ability to elect out is the government's first failure, the failure to give notice of this beginning administrative partnership proceeding. And so really, you know, the taxpayers have very little ability to write the rules. You're telling us this is really a one-off case unless the government screws up again that way. Absolutely. I think that's why you're not going to find any case law. I think it's so clear that when they do screw up, they don't make a point of it and bring it this far into litigation. It would have been conceded at that Branderton conference back in February 2006 or wherever that was. I mean, the irony of the Black case for me personally, it's the same original IRS attorneys that were in this one. And I have really a high degree of respect for Donna Herbert and all the IRS counsel, even though we do disagree. And I think it was her call. She might have conceded the case then and just said, you know, we blew a satchel. And I think when the court recognized that earlier in arguments today, they kind of thought, wow, I think you see exactly what the issue is. And, you know, candidly, that's why we think that the tax court should be upheld in this matter, the appeal denied. All right, thank you. If the counsel have any, do either of the judges have any additional questions of the government? All right, then this matter will stand submitted.
judges: Bennett, TROTT, CALLAHAN